UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| FINAL EXIT NETWORK, INC., EDMUND ("TED") BALLOU, and KEVIN T. BRADLEY, | Case No. 21-CV-1235 (NEB/HB) |
| Plaintiffs, | |
| v. | ORDER ON MOTION TO DISMISS |
| JAMES STUART and TONY PALUMBO, | |
| Defendants. | |

A Minnesota statute makes it a crime for a person to assist another in suicide. This case is one of a line of challenges to the constitutionality of that statute. Plaintiff Final Exit Network, Inc. provides information, education, and emotional support to people who are terminally ill and considering ending their lives. (ECF No. 13 ("Compl.") ¶ 5.) Individual plaintiffs Edmund Ballou and Kevin T. Bradley volunteer as "Exit Guides" with Final Exit Network. (*Id.* ¶ 6.) Together, the plaintiffs (collectively, "FEN") brought this pre-enforcement challenge seeking a declaratory judgment that the statute unconstitutionally restricts speech. (*Id.* ¶¶ 1, 7.) FEN alleges that Anoka County might prosecute them under this statute for First Amendment protected speech, so they sued Anoka County Sheriff James Stuart and Anoka County Attorney Tony Palumbo in their official capacities (collectively, "Anoka County"). (*Id.* ¶¶ 9–10.) The Court now considers Anoka County's motion to dismiss for failure to state a claim.

## BACKGROUND

### I. Previous Final Exit Network Cases

This suit is not the first challenge to Minnesota Statute Section 609.215, subdivision 1 ("Section 609.215"). To understand the current challenge, the Court offers a brief history of the statute's litigation.

As enacted by the legislature, Section 609.215 made it a crime when a person "intentionally advises, encourages, or assists another in taking the other's own life." Minn. Stat. § 609.215, subdiv. 1. The first challenge made its way to the Minnesota Supreme Court, which excised the terms "advise" and "encourage" as unconstitutional. *State v. Melchert-Dinkel*, 844 N.W.2d 13, 24 (Minn. 2014). But *Melchert-Dinkel* upheld the "assists" portion of the statute, even when "assists" criminalizes only speech. *Id.* at 22–23.

In upholding the portion of the statute aimed at "assist[ing]" suicide, the Minnesota Supreme Court applied First Amendment strict scrutiny analysis. It found a compelling government interest in preserving human life and preventing suicide and concluded that the statute is narrowly tailored to affect those interests. *Id.* at 22–23. By referencing assisting "another," the statute only proscribes "targeted speech aimed at a specific individual." *Id.* at 23. The term "assists" narrows the statute's reach by criminalizing only speech that "enable[s] the person to commit suicide" or "instruct[s]

another on suicide." *Id.* Since the statute as modified is narrowly tailored to achieve a compelling state interest, it survived strict scrutiny. *Id.*

A few years later, in *State v. Final Exit Network, Inc.*, the Dakota County Attorney prosecuted Final Exit Network for violating Section 609.215. 889 N.W.2d 296 (Minn. Ct. App. 2016). Final Exit Network was convicted under Section 609.215 and appealed to the Minnesota Court of Appeals, raising both facial and as-applied challenges to the statute. *Id.* at 302. The Court of Appeals, applying *Melchert-Dinkel*, "interpreted the term 'assists' as 'proscrib[ing] speech or conduct that provides another person with what is needed for the person to commit suicide' or 'enabl[ing] the person to commit suicide.'" *Id.* (quoting *Melchert-Dinkel*, 844 N.W.2d at 23). The Court of Appeals held that this interpretation of "assists" is not facially unconstitutional. *Id.* at 303.

The Court of Appeals also rejected Final Exit Network's as-applied challenge because it found that the underlying conduct was not protected speech. *Id.* at 303–07. Final Exit Network was convicted for "instructing [the decedent] on suicide methods." *Id.* at 307. The Final Exit Network representatives observed the suicide, watched the decedent connect tubing to helium tanks, and would have explained how to hook up the tanks properly if needed. *Id.* They also stayed to ensure the decedent died, removed the equipment from the decedent's home, and disposed of the equipment "to create the appearance of a natural death." *Id.* In that context, the statute prohibited speech offering specific instructions on suicide methods, not speech protecting "ideas and messages." *Id.*

3

Because of that difference, the Court of Appeals held that Section 609.215 was constitutional as applied. *Id.* The Minnesota Supreme Court denied Final Exit Network's petition for review, and the United States Supreme Court denied its petition for writ of certiorari. *Final Exit Network, Inc. v. Minnesota*, 138 S. Ct. 145 (2017).

Having lost that case, Final Exit Network sued in federal court. In its first federal suit, *Final Exit Network, Inc. v. Ellison*, Final Exit Network and two of its volunteers sought a declaratory judgment that Section 609.215 is facially unconstitutional when it "criminalizes speech that enables a suicide." 370 F. Supp. 3d 995, 1007 (D. Minn. 2019). They raised many of the same arguments brought here, but unlike this case, they challenged the statute on its face and not as applied to particular speech. *Id.* at 1014 & n.8. This Court dismissed the case because collateral estoppel barred Final Exit Network from re-litigating the same issues it raised at the Minnesota Court of Appeals. *Id.* at 1019–20. The Court did not address the constitutionality of the statute.[1]

## II. Background of this Case

FEN sues to challenge Section 609.215 again. In May 2021, Exit Guides Bradley and Ballou visited the home of a program participant ("AC resident") in Anoka County, Minnesota. (Compl. ¶ 16.) Anoka County sheriff's deputies arrived within minutes, after receiving a phone call alerting them that an "'assisted suicide' was to take place" at the

---

[1] Anoka County misstates *Final Exit Network, Inc. v. Ellison* as finding that Section 609.215 is constitutional on its face. (ECF No. 19 ("Defs' Br.") at 17 n.3.) Because collateral estoppel barred the claim, this Court did not reach the constitutionality issue.

4

home. (*Id.* ¶¶ 16–17.) FEN maintains that the Exit Guides merely exchanged pleasantries with the AC resident. (*Id.* ¶ 16.) Upon arriving, the deputies seized the Exit Guides' bags, and obtained warrants to search their contents and the contents of the computers inside them. (*Id.* ¶¶ 17–18.) Anoka County maintains that it has probable cause to believe that the bags and their contents were used in the commission of a crime, and the computers contain evidence of a crime. (*Id.* ¶ 19.) Anoka County has not prosecuted the Exit Guides or Final Exit Network. But given the search warrants, FEN alleges that they face a threat of imminent prosecution and punishment under Section 609.215 for speech protected by the First Amendment. (*Id.* ¶ 20.) FEN also alleges that the sheriff's deputies violated the Fourth and Fourteenth Amendments' protection against an unwarranted search and seizure of property. (*Id.* ¶ 45.)

FEN alleges three counts: (1) an as-applied challenge alleging Section 609.215 violates the First Amendment by criminalizing protected speech; (2) an as-applied challenge that Section 609.215 is void because it is vague; and (3) a 42 U.S.C. Section 1983 claim alleging the Anoka County Sheriff violated FEN's Fourth Amendment rights and requesting damages. (*Id.* ¶¶ 23–45.) Anoka County moves to dismiss all three counts.

## ANALYSIS

### I. Rule 12(b)(6) Standard

When reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must "accept[] as true all factual

5

allegations in the complaint and draw[] all reasonable inferences" in the nonmovant's favor. *Loeffler v. City of Anoka*, 893 F.3d 1082, 1084 (8th Cir. 2018). Although the factual allegations need not be detailed, they must be enough to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570.

### II.     Consideration of Search Warrants

Anoka County attached the search warrants to its brief to "disprove" FEN's allegation that they "merely exchanged pleasantries" with the Anoka County resident. (Defs' Br. at 13; ECF Nos. 20-1, 20-2.) The operative complaint itself refers to the warrants but not the facts in them. The parties dispute whether the Court may consider the warrants in this motion to dismiss. Courts may consider documents "necessarily embraced by the complaint" in ruling on a Rule 12(b)(6) motion, including "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Ryan v. Ryan*, 889 F.3d 499, 505 (8th Cir. 2018) (citations omitted). FEN alleges the *existence* of the two search warrants in its complaint, but not the underlying allegations. (Compl. ¶¶ 10, 18, 21; *see* Pl's Br. at 37 ("We believe that in due course we will show the Court that the warrant applications were intentionally written to avoid acknowledging facts within the knowledge of the deputies.").) Given that FEN disputes the authenticity of the factual allegations made in the search warrants, the Court will not consider them.

6

### III.    Count I: As-Applied Challenge

To survive a motion to dismiss on an as-applied challenge, FEN must allege infringement of protected speech or conduct. Anoka County asks this Court to dismiss FEN's as-applied challenge because the complaint includes factual allegations of conduct not protected by the First Amendment—specifically, the Exit Guides' actions in screening the AC resident, communicating with the AC resident, and traveling to the AC resident's home. The First Amendment generally does not protect conduct; conduct must be "sufficiently imbued with elements of communication" to be protected by the First Amendment. *Johnson*, 491 U.S. at 404.

The complaint alleges that "[t]he Exit Guides and the persons at the home had merely exchanged pleasantries." (*Id.* ¶¶ 5, 16.) The parties do not dispute that the First Amendment protects this "exchange of pleasantries." FEN then alleges that they are "threatened with imminent arrest, prosecution, and punishment" by Anoka County for this speech. (*Id.* ¶¶ 9, 20–21.) These allegations support a plausible inference that Anoka County will prosecute FEN for protected speech. As stated in the complaint, the Exit Guides' conversation with the Anoka County resident is arguably protected speech, and FEN expects to be prosecuted for it. Thus, FEN alleges sufficient facts to state a claim for a violation of their First Amendment rights. *See Porter v. Gore*, 354 F. Supp. 3d 1162, 1175–79 (S.D. Cal. 2018) (denying a motion to dismiss when plaintiff pled a reasonable fear of

prosecution because balancing government interests required further factual development).[2]

Anoka County argues that, on the face of the complaint, FEN "engaged in non-speech conduct" by screening the AC resident for services, by having "person-specific" communication with the AC resident, and by "travel[ing] to the resident's house in possession of two personal bags." (Def's Br. at 12.) As Anoka County analyzes it, because some of FEN's actions are conduct and not speech, they cannot challenge the statute as applied to pure speech. (*Id.* at 13.)

Neither action transforms speech into conduct. Traveling to the resident's house with bags cannot transform speech into conduct any more than driving a car to give a presentation turns the presentation into conduct. And the First Amendment protects person-to-person communication; speech need not be public for the First Amendment to apply. *See United States v. Alvarez*, 567 U.S. 709, 722–23 (2012) (holding that a statute was "in conflict with the First Amendment" when it "[p]ermitt[ed] the government to decree this speech to be a criminal offense, whether shouted from the rooftops or made in a barely audible whisper" because this censored too much speech).

---

[2] Courts must conduct a fact-intensive balancing test to determine whether a government regulation of protected speech violates the First Amendment. *See Am. Libr. Ass'n v. Reno*, 33 F.3d 78, 84–88 (D.C. Cir. 1994) (describing strict and intermediate scrutiny). The Court will not do this on a motion to dismiss, so it does not consider FEN's arguments that Section 609.215 cannot survive strict scrutiny, or that less restrictive alternatives exist. (Pl's Br. at 18, 28.) As Anoka County argues, doing so would be improper. (ECF No. 28 at 5.)

Because the complaint supports a plausible inference that Anoka County will prosecute FEN for purely protected speech, the Court denies Anoka County's motion to dismiss the as-applied challenge.

IV.     **Count II: Void for Vagueness**

FEN argues that Section 609.215 is impermissibly vague under the Due Process clause of the Fifth Amendment as applied to them. When federal courts consider whether a state statute is vague, they must give it the construction ascribed by the state courts. *See, e.g.*, *Albertson v. Millard*, 345 U.S. 242, 244 (1953) ("The construction given to a state statute by the state courts is binding upon federal courts."). The vagueness of a content-based restriction such as Section 609.215 "raises special First Amendment concerns because of its obvious chilling effect on free speech." *Reno v. Am. C.L. Union*, 521 U.S. 844, 871–72 (1997). But "perfect clarity and precise guidance" are not required, "even of regulations that restrict expressive activity." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989).

A statute is vague if it does not "provide adequate notice of the proscribed conduct" or if it "lend[s] itself to arbitrary enforcement." *United States v. Washam*, 312 F.3d 926, 929 (8th Cir. 2002); *see also United States v. Williams*, 553 U.S. 285, 304 (2008) ("A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.").

9

*Notice.* An as-applied challenge that a statute is vague because it gave inadequate notice fails if "the statutory terms are clear in their application to the plaintiffs' proposed conduct," even if the statute is not "clear in every application." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 21 (2010). So to survive the motion to dismiss, FEN must plead facts from which this Court can infer that FEN had no notice that the statute prohibited its conduct. *See United States v. Palmer*, 917 F.3d 1035, 1039 (8th Cir. 2019) (holding that a statute was not vague as applied when conduct was clearly proscribed); *see also Farrell v. Burke*, 449 F.3d 470, 490 (2d Cir. 2006) (finding that a defendant who possessed pornography in violation of parole conditions "must persuade [the court] that he lacked notice that the particular materials that he was punished for possessing were proscribed").

FEN argues that the statutory terms "assist" and "suicide" fail to provide fair notice of the proscribed conduct, and so the Court should determine the statute is void because it is vague.[3] (Compl. ¶¶ 34–36.) The Court disagrees. A law is unconstitutionally vague when it fails to give a "person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Section 609.215 criminalizes "aiding suicide"—"assist[ing] another in taking the other's own life." Minn. Stat. § 609.215, subdiv. 1. "Another" means a person

---

[3] This argument seems to be a facial challenge to the statute. The Court discusses it nonetheless because the statute's meaning is necessary to resolving the as-applied challenge.

10

other than the defendant, and "in taking the other's own life" means the other person took an action which ended his or her life—the person died. *See Melchert-Dinkel*, 844 N.W.2d at 22 (noting that Section 609.215 used "the word 'another,' which refers to an individual, rather than 'others,' which would refer to a larger audience"). Neither party points to any specific vagueness in this requirement.

So FEN's remaining complaint is with the word "assist." As the Minnesota Supreme Court explained in *Melchert Dinkel*, the "assist[]" prohibition of Section 609.215 "proscribes speech or conduct that provides another person with what is needed for the person to commit suicide. This signifies a level of involvement in the suicide beyond merely expressing a moral viewpoint or providing general comfort or support." *Id.* at 23. This, the Minnesota Supreme Court explained, "narrows the reach to only the most direct, causal links between speech and the suicide." *Id.* Section 609.215 as clarified by *Melchert-Dinkel* is not vague. FEN may express a moral viewpoint, may provide general comfort and support; FEN may not enable a person to commit suicide. *See id.* (explaining that Section 609.215 does not prohibit expressing a moral viewpoint or general comfort and support, but does prohibit speech that "enable[s] a person to commit suicide).

The problem with FEN's vagueness challenge is the way they have pled their case. According to the complaint, the Exit Guides "merely exchanged pleasantries" with the AC resident. (Compl. ¶ 16.) If FEN truly only "exchanged pleasantries," FEN plainly

11

would not be guilty of a violation of the statute.[4] No conduct alleged in the complaint constitutes a "substantial step" toward assisting another in committing suicide. The statute is not vague as applied to FEN's conduct because the statute plainly does not apply to it.[5] *See Humanitarian L. Project*, 561 U.S. at 21 ("[T]he statutory terms are clear in their application to plaintiffs' proposed conduct, which means that plaintiffs' vagueness challenge must fail."). Thus, FEN's void for vagueness claim is dismissed for failure to state a claim.

## V.     Count III: Section 1983 Claim[6]

FEN also raises a Section 1983 claim against the Anoka County Sheriff in his official capacity for seizing the Exit Guides' property so the claim is treated as one against Anoka County (a *Monell* claim). *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (citing *Monell v.*

---

[4] Thus this case is different from *United States v. Turner*, in which the Eighth Circuit explained that, generally, courts may not resolve as-applied challenges on a motion to dismiss because an as-applied challenge is "inevitably bound up with evidence about the alleged offense itself." 842 F.3d 602, 605 (8th Cir. 2016) (citation omitted). Unlike *Turner*, no amount of factual development on the conduct described in FEN's complaint could allow the Court to find Section 609.215 vague.

[5] Similarly, FEN has not alleged facts that suggest Section 609.215 grants too much enforcement discretion to the government because nothing in the statute could be interpreted as prohibiting "exchang[ing] pleasantries." *See Humanitarian L. Project*, 561 U.S. at 20 (explaining that a statute may be void for vagueness as applied if it allows for too much enforcement discretion).

[6] The complaint describes Count III as a claim for "damages." (Compl. at 10.) The Exit Guides seek damages under Section 1983 because the search and seizure of their bags allegedly violated their Fourth Amendment, (*id.* at 11), so the Court refers to Count III as a Section 1983 claim.

*Dept. of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). Governmental entities "are not vicariously liable under [Section] 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). To state a claim, FEN must allege "an unconstitutional act by a municipal employee." *Webb v. City of Maplewood*, 889 F.3d 483, 487 (8th Cir. 2018).[7] And Anoka County may only be liable for an unconstitutional act[8] resulting from an official policy, an unofficial custom, or a failure to train or supervise. *Robbins v. City of Des Moines*, 984 F.3d 673, 681–82 (8th Cir. 2021).

FEN's claim fails because the complaint does not allege an unofficial policy or custom. A "policy" refers to "an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Indep.*, 829 F.3d 695, 700 (8th Cir. 2016) (citation omitted). Generally, an isolated incident of alleged misconduct does not establish a municipal policy or custom. *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013). *Monell* plaintiffs need not identify a specific policy or custom to survive a motion to dismiss, but they must

---

[7] Anoka County asserts that "individual liability first must be found on an underlying substantive claim." (Def's Br. at 22 (citing *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005)). But in *Webb*, the Eighth Circuit explained that individual liability is not always required. 889 F.3d at 487.

[8] The parties dispute whether FEN alleges an unconstitutional act. Anoka County's argument relies heavily on the substance of the warrants, which this Court does not consider. The Court need not decide whether FEN adequately alleged an unconstitutional act because the fact that FEN did not adequately allege a policy, custom, or failure to train is dispositive.

allege facts that would support "an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom."[9] *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (citation omitted).

The complaint alleges that "the sheriff's deputies were executing an Anoka County custom or policy" when they seized the Exit Guides' property. (Compl. ¶ 40.) But it alleges no other facts in support of the existence of such a policy or custom. Nor does it identify a specific policy or custom. Because the complaint merely restates the law without pointing to a specific policy or custom and without providing facts from which the Court could infer a specific policy or custom, the motion to dismiss the *Monell* claim is granted. *See Triemert v. Wash. Cnty.*, No. 13-CV-1312 (PJS/JSM), 2013 WL 6729260, at \*12 (D. Minn. Dec. 19, 2013) (dismissing *Monell* claim that "d[id] not describe any *specific* policy, custom or practice that allegedly caused a violation of [the plaintiff's] constitutional rights," and did not provide any "factual allegations describing any specific policy, custom or practice that was established by any particular defendant") (emphasis in original), *aff'd*, 571 F. App'x 509 (8th Cir. 2014).

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, the motion to dismiss (ECF No. 18) is GRANTED IN PART and DENIED IN PART as follows:

---

[9] For example, a plaintiff can allege a pattern of the same violation. *See D.B. v. Hargett*, No. 13-CV-2781 (MJD/LIB), 2014 WL 1371200, at \*5–6 (D. Minn. Apr. 8, 2014) (requiring more specific factual allegations of prior incidences to plead a custom or policy).

14

1. Counts II and III of the operative complaint are DISMISSED; and

2. Count I remains pending.


Dated: February 3, 2022                    BY THE COURT:

                                           s/Nancy E. Brasel
                                           Nancy E. Brasel
                                           United States District Judge